**VACATED; and Opinion Filed December 19, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00370-CV

### TIERONE CONVERGED NETWORKS, INC., Appellant
### V.
### LAVON WATER SUPPLY CORPORATION, Appellee

**On Appeal from the County Court at Law No. 5
Collin County, Texas
Trial Court Cause No. 005-00055-2013**

## MEMORANDUM OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

Before the Court is TierOne Converged Networks, Inc.'s motion to review the county court's October 2, 2013 order increasing the supersedeas bond from $10,800 to $40,500. Tierone contends the county court abused its discretion because the evidence was legally and factually insufficient to support the increase. We sustain Tierone's issue and vacate the county court's order.

### Background

Tierone, an internet service provider, has a lease agreement with Lavon Water Supply Corporation (Lavon) to place antennas and other equipment on three of Lavon's water towers.[1] Tierone pays rent in the amount of $900 a month. Lavon sued to evict Tierone and won.

---

[1] It appears the underlying dispute involves only the "main" water tower.

Tierone has appealed the judgment. It superseded the judgment by depositing one year's rent in the amount of $10,800 as ordered by the county court on February 15, 2013.

On August 30, 2013, Lavon filed a motion in the county court to increase the supersedeas bond. As grounds for an increase, it asserted that another internet service provider offered to pay $3,375 a month to lease space on the water towers. After conducting a hearing, the county court increased the supersedeas bond to $40,500. Tierone sought relief in this Court and we granted a stay pending our review.

**Discussion**

Rule 24.3(a)(2) of the rules of appellate procedure provides that, even after the trial court's plenary power expires, the trial court has continuing jurisdiction to modify the amount of security required to continue the suspension of a judgment's execution if circumstances change. TEX. R. APP. P. 24.3(a)(2). On any party's motion, we may review the sufficiency or excessiveness of the amount of security and the trial court's exercise of discretion in setting the amount of security. *See* TEX. R. APP. P. 24.4. We review a trial court's determination of the amount of security, to the extent it turns on a question of fact, for an abuse of discretion. *See Imagine Automotive Group, Inc. v. Boardwalk Motor Cars, LLC*, 356 S.W.3d 716, 718 (Tex. App.—Dallas 2011, no pet.). To the extent a trial court's ruling turns on a question of law, we review it de novo. *Id.*

In setting the supersedeas bond in an eviction suit, the county court must take into consideration the value of rents likely to accrue during appeal, damages that may occur as the result of the stay during appeal, and other damages or amounts as the court may deem appropriate. TEX. PROP. CODE ANN. § 24.007(a) (West Supp. 2013). The proper measure of damages for rental property is the reasonable value of rents likely to accrue during the appeal. *See Hart v. Keller Properties*, 567 S.W.2d 888, 889 (Tex. Civ. App.—Dallas 1978, no writ).

At the hearing, Joe Birmingham testified that he is an owner of Wi-Five, a competitor wireless internet service provider. Birmingham testified that he had proposed that *if* Lavon had a water tower with no equipment on it, Wi-Five would put a minimum of 15 radios on the tower and pay monthly rent in the amount of $3,375. He said he purchased $300,000 in equipment in anticipation of signing a lease with those terms. He said Tierone stopped the contract from being signed. He has been in "waiting mode" for over one and one-half years. He testified that currently, Tierone is using one-hundred percent of the broadcast frequencies on the tower. He also said there is no physical room on the main tower for Wi-Five to mount any equipment.

Regarding the possibility that Wi-Five could share space with Tierone on Lavon's main water tower, Birmingham indicated it would be workable if one-hundred percent of the frequencies are not being used, he is given "chunks of band," and multiple years are guaranteed. Birmingham indicated that he would put equipment on the tower and cooperate with Tierone under those circumstances *if* he had a five-year contract.

Nate Curling, a Wi-Five employee, testified that he went up on the tower to view Tierone's equipment. He testified that in order to make room for Wi-Five's equipment on the tower, Tierone would have to mount taller poles and consolidate its equipment onto the taller poles.

Ken Marshall, chief technical officer for Tierone, testified that Tierone and Wi-Five are currently co-located on five water towers. On some of those towers, there are additional internet providers as well. He said they have never had a problem working together on those towers. Coordinating frequencies gets worked out all the time through cooperation. Tierone has no objection to Wi-Five putting equipment on the tower. He testified that Tierone is prepared to make whatever accommodations are necessary to allow Wi-Five to put equipment on the tower.

–3–

Additionally, he testified that Tierone is willing to *permanently* waive the exclusivity provision as to the frequencies in its contract.[2]

Tierone disputes the county court's conclusion of law that Tierone did not controvert Lavon's evidence of current reasonable rental value. It was Lavon's burden to show the reasonable value of rents likely to accrue. *See Hart*, 567 S.W.2d at 889. The only evidence offered by Lavon was the amount Wi-Five proposed to pay. Tierone contends that it is not enough for a competitor to come to court and say that it would pay four, five, or ten times the current rental rate. If this were the law, Tierone argues, any landlord could testify that he *could* lease the space for much more pending appeal and the tenant would be required to post additional security for the hypothetical damages or be evicted. We agree. After reviewing the evidence, we conclude there is no evidence as to the *reasonable* value of rents likely to accrue. Because there was no testimony as to the reasonableness of the proposed $3,375 monthly rent, there was nothing for Tierone to controvert. Lavon failed to meet its burden to show the reasonable value of rents likely to accrue.

Tierone also contends the evidence does not support the county court's finding that the stay prevents Lavon from taking advantage of other opportunities to lease space on the towers. At the hearing, Marshall testified that Tierone would permanently waive the exclusivity clause regarding the frequencies, make the necessary accommodations to make space for Wi-Five's equipment, and cooperate with regard to any frequency interference that may arise. Birmingham testified that those conditions would be acceptable to him as long as he could get a five-year contract. With Tierone permanently waiving the exclusivity provision, there is nothing preventing Wi-Five from signing a 5-year contract with Lavon. Moreover, the evidence revealed that Tierone and Wi-Five are cooperating and sharing space on five other water towers. We

---

[2] Paragraph 8 of the lease provides that: "Lessor agrees NOT to provide access to any other company, equipment or technology that operates in the 2.4GHz or 5.2-5.8GHz ISM bands. (frequencies)"

–4–

conclude the evidence is insufficient to support the finding that the stay is preventing Lavon from taking advantage of leasing space on the towers to other providers.

For the above-noted reasons, we conclude the county court abused its discretion in increasing the amount of the supersedeas bond.  We vacate the county court's October 2, 2013 order.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE


130370F.P05